231 F.2d 544
 WAYLYN CORPORATION, Defendant, Appellant,
v.
UNITED STATES of America, Plaintiff, Appellee.
GARDEN CORPORATION
v.
UNITED STATES of America.
PIEDMONT CORPORATION
v.
UNITED STATES of America.
OKLAHOMA CORPORATION
v.
UNITED STATES of America.
HILL CORPORATION
v.
UNITED STATES of America.
PONCE DARLINGTON, Inc.
v.
UNITED STATES of America.
RIO PIEDRAS DARLINGTON, Inc.
v.
UNITED STATES of America.
MAYAGUEZ DARLINGTON, Inc.
v.
UNITED STATES of America.
 Nos. 5039-5046.
 United States Court of Appeals First Circuit.
 Heard February 8, 1956.
 Decided April 3, 1956.
 
 William G. Grant, Atlanta, Ga., with whom Garrard Harris and Benicio Sanchez Castano, San Juan, P. R., were on brief, for appellants.
 Ruben Rodriguez Antongiorgi, U. S. Atty., San Juan, P. R., for appellee.
 Before MAGRUDER, Chief Judge, and MARIS and WOODBURY, Circuit Judges.
 MAGRUDER, Chief Judge.
 
 
 1
 These cases are all essentially the same, and reference will be made only to Waylyn Corp. v. United States, No. 5039.
 
 
 2
 The United States filed its complaint in the United States District Court for the District of Puerto Rico, seeking in a foreclosure proceeding to recover on a mortgage note given by defendant Waylyn Corp. to Manufacturers Trust Co. The loan for which the note was given was secured by a mortgage insured by the Federal Housing Administration pursuant to the provisions of the National Housing Act, 12 U.S.C.A. § 1702 et seq. Upon a default, as alleged, the mortgage note was assigned to Guy T. O. Hollyday, as Federal Housing Commissioner, together with all rights under the mortgage securing the same.
 
 
 3
 Waylyn Corp. filed an answer and a counterclaim for damages against the United States in the sum of $1,551,902.00. By virtue of the allegations of the answer and counterclaim, defendant's prayer was that the complaint be dismissed and that an affirmative judgment be rendered against the United States in the sum just mentioned.
 
 
 4
 The counterclaim undertook to state a cause of action sounding in tort, alleging that Waylyn Corp. had suffered pecuniary losses in consequence of wrongful action of the Federal Housing Administration in willfully and arbitrarily withholding occupancy permits and willfully and arbitrarily causing the publication of a newspaper announcement to the effect that Waylyn Corp. was without authority to sell the dwellings in the housing project covered by the mortgage.
 
 
 5
 Upon motion, the district court entered a "final judgment" dismissing this counterclaim for lack of jurisdiction, reciting in accordance with Rule 54(b), Fed.Rules Civ.Proc. 28 U.S.C. that there was no just reason for delay. The present appeal is from this judgment.
 
 
 6
 In its memorandum opinion the district court considered, and rejected, the possibility that the counterclaim might fall within the consent of the United States to be sued as contained in the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680. Appellant makes no challenge to this ruling of the district court, and we take it that we may leave the Federal Tort Claims Act out of account.
 
 
 7
 In the National Housing Act, it is provided, 12 U.S.C.A. § 1702, that the Federal Housing Commissioner shall, in carrying out the provisions of the Act, "be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal." This no doubt constituted a partial waiver of governmental immunity, to the extent that it permitted a suit against the Commissioner in his official capacity; but the statutory provision falls short of a consent that the United States as such may be sued on a claim arising out of the administration of the National Housing Act. The practical difference is pointed out in Federal Housing Administration, Region No. 4 v. Burr, 1940, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724. There, after holding that 12 U.S.C.A. § 1702 should be construed liberally to constitute a consent that the Federal Housing Administrator (now Commissioner) might be subjected to garnishment proceedings on account of moneys payable by the Federal Housing Administration to an employee, the Court ended up its opinion with the following, 309 U.S. at pages 250, 251, 60 S.Ct. at page 493:
 
 
 8
 "Petitioner claims that execution should not have been allowed under the judgment. The Act permits the Administrator `to sue and be sued in any court of competent jurisdiction, State or Federal.' Whether by Michigan law execution under such a judgment may be had is, like the availability of garnishment, Federal Land Bank [of St. Louis] v. Priddy [1935, 295 U.S. 229, 55 S.Ct. 705, 79 L.Ed. 1408], a state question. And so far as the federal statute is concerned, execution is not barred, for it would seem to be part of the civil process embraced within the `sue and be sued' clause. That does not, of course, mean that any funds or property of the United States can be held responsible for this judgment. Claims against a corporation are normally collectible only from corporate assets. That is true here. Congress has specifically directed that all such claims against the Federal Housing Administration of the type here involved `shall be paid out of funds made available by this Act (chapter).' § 1. Hence those funds, and only those, are subject to execution. The result is that only those funds which have been paid over to the Federal Housing Administration in accordance with § 1 and which are in its possession, severed from Treasury funds and Treasury control, are subject to execution. Since no consent to reach government funds has been given, execution thereon would run counter to Buchanan v. Alexander [1846, 4 How. 20, 11 L.Ed. 857]. To conclude otherwise would be to allow proceedings against the United States where it had not waived its immunity. This restriction on execution may as a practical matter deprive it of utility, since funds of petitioner appear to be deposited with the Treasurer of the United States and payments and other obligations are made through the Chief Disbursing Officer of the Treasury. But that is an inherent limitation, under this statutory scheme, on the legal remedies which Congress has provided. And since respondent obtains its right to sue from Congress, it necessarily must take it subject to such restrictions as have been imposed. The fact that execution may prove futile is one of the notorious incidents of litigation, as is the fact that execution is not an indispensable adjunct of the judicial process." [Italics added.]
 
 
 9
 Whether we like the doctrine of sovereign immunity of the United States or not, we must take it as established law that the United States cannot be sued without its consent. It is clear that no court, federal or state, would have had jurisdiction to entertain an original complaint by Waylyn Corp. against the United States on the cause of action stated in the counterclaim. The filing of a suit in the name of the United States does not in itself amount to a waiver of sovereign immunity, subjecting the United States to an affirmative adverse judgment on a counterclaim filed by the defendant in such suit. This settled doctrine is reaffirmed, maybe out of an excess of caution, in Rule 13(d) of the Federal Rules of Civil Procedure, providing:
 
 
 10
 "Counterclaim Against the United States. These rules shall not be construed to enlarge beyond the limits now fixed by law the right to assert counterclaims or to claim credits against the United States or an officer or agency thereof."
 
 
 11
 As this court said in United States v. Silverton, 1 Cir., 1952, 200 F.2d 824, 826:
 
 
 12
 "But it is clear that the United States, by filing its original complaint against the defendant in the court below, did not thereby consent to be sued on a counterclaim based upon a cause of action as to which it had not otherwise given its consent to be sued. United States v. Shaw, 1940, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888."
 
 
 13
 Compare National City Bank of New York v. Republic of China, 1955, 348 U.S. 356, 75 S.Ct. 423, 99 L.Ed. 389, which is not cited or relied on by appellant herein, and which case we suppose was not intended to overturn the holding in United States v. Shaw, 1940, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888.
 
 
 14
 The situation presented in this case is no doubt peculiar, and we are frank to say that it does not look quite right. Perhaps this results from the fact that though 12 U.S.C.A. § 1702 would have permitted the instant complaint to have been filed by the Federal Housing Commissioner in his own name and in his official capacity, nevertheless the complaint here was filed in the name of the United States itself as the real party in interest. And we are bound to recognize that such suit may be prosecuted by the United States in its own name, since it was so held in United States v. Summerlin, 1940, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283.
 
 
 15
 Neither the district court nor we have adjudicated the merits of the cause of action asserted in the counterclaim. The judgment dismissing the counterclaim for lack of jurisdiction is without prejudice to the assertion against the Federal Housing Commissioner in some court of competent jurisdiction of the cause of action alleged in the counterclaim. Nor do we consider or determine whether the United States, under its complaint still pending in the court below, would be entitled to a judgment against Waylyn Corp. for the full amount unpaid on the mortgage note without diminution by way of set-off for damages which might have been asserted in a claim against the Federal Housing Commissioner had that official brought the present suit.
 
 
 16
 The judgments of the District Court are affirmed.